UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                          Case No. 17-cr-113-pp

PABLO HIDALGO-SANCHEZ,

    Defendant.

---

### ORDER DENYING DEFENDANT'S MOTION TO MODIFY BAIL
### (DKT. NO. 706)

---

On November 12, 2019, after a jury trial, the jury found the defendant guilty of conspiring with others to possess with intent to distribute and to distribute more than fifty grams of methamphetamine, more than a kilogram of heroin and more than five kilograms of cocaine. Dkt. No. 630. Under 21 U.S.C. §§841(b)(1)(A)(i), (ii) and (viii), the offense of conviction carries a mandatory minimum sentence of ten years in custody and a maximum penalty of life in prison. Under 18 U.S.C. §3143(a)(2), the court *must* detain the defendant pending sentencing unless it finds (a) that there is a substantial likelihood that a motion for acquittal or a new trial will be granted, or that the government will not be recommending a prison sentence, *and* (b) that there is clear and convincing evidence that the defendant is not likely to flee or to pose a danger to any other person or the community.

The defendant asks the court to hold a detention hearing to consider whether to release him on conditions. Dkt. No. 706. He indicates that he has

1

been detained at the Kenosha County Detention Center since his arrest, that on April 15, 2020 the defendant reported to his counsel that he felt ill and described symptoms consistent with COVID-19, that staff members at KDC had tested positive for COVID-19, that the Wisconsin Department of Corrections is taking steps to reduce the state prison population and that federal courts are considering requests for release from federal pretrial detainees. Id.

The government opposes the motion. Dkt. No. 709. It recounts some of the evidence presented during the almost two-week trial. Id. at 2. It cites numerous cases holding that the "danger to the community" referenced in 18 U.S.C. §§3142 and 3143 is not just the danger of violence, but also the danger that the defendant will engage in criminal activity if released. Id. at 3. The government also asserts that at previous detention hearings before the magistrate judge, the government presented evidence that the defendant might have threatened to harm a co-defendant. Id. at 4. The government points out that there is an immigration detainer pending for the defendant. Id. Finally, the government notes that the defendant has not asserted that he is a member of a group known to be particularly vulnerable to severe infection if diagnosed with COVID-19, that KCDC has taken precautions to keep the inmate population safe, that as of the date of the government's response, no inmates at KCDC had been diagnosed with the virus and that the defendant's proposed release plan— to live with his wife and young children—would pose a danger by exposing his *family* to the virus. Id. at 4-6.

Reviewing the factors in §3143(a)(2), the court concludes that the defendant has not met his burden for overcoming the presumption of detention. The government must seek a sentence of imprisonment, because the defendant is subject to a mandatory minimum sentence of ten years. So the defendant cannot make a finding under §3143(a)(2)(A)(ii). The defendant has filed a motion entitled "Defendant's Rule 29 Motion Challenging the Sufficiency of the Evidence." Dkt. No. 628. Because Fed. R. Crim. P. 29 governs motions for a judgment of acquittal, the court assumes that that is what the defendant is seeking. The court has not ruled on that motion, although based on what the court saw and heard at trial, the court does not see a substantial likelihood that it will grant that motion. But assuming, for the sake of argument that the court thought there was a substantial likelihood that it would grant that motion (§3143(a)(2)(A)(i)), the defendant has not demonstrated by clear and convincing evidence that he is not likely to flee or pose a danger to the community.

The defendant indicates that he has no criminal record. Dkt. No. 706 at 5. The prior record check prepared by probation at the time of his arrest indicates that the defendant was picked up by Customs and Border Patrol in May of 2008 for illegally entering the United States and misrepresenting or concealing facts, spent three days in jail and then was subjected to expedited removal. Dkt. No. 4 at 2. The offense of conviction occurred between January 1, 2016 and June 20, 2017, and the defendant was here in Milwaukee at that time, which demonstrates that he re-entered the United States sometime after

3

Case 2:17-cr-00113-PP    Filed 04/27/20    Page 3 of 10    Document 710

his 2008 expedited removal. The bond study indicated that the Department of Homeland Security reported that there was an immigration detainer on the defendant and that he is subject to deportation. Dkt. No. 91 at 2. The fact that the defendant is not a citizen and has unlawfully entered the United States at least twice shows that he presents a danger of again illegally re-entering the United States. As the government notes, if this court were to release the defendant, he would be taken into ICE custody on the detainer. His history, and the fact that he has young children here (at the time of his arrest, he had a six-year-old daughter and a three-year-old son, as well as a baby on the way, dkt. no. 91 at 1), indicate that he presents a risk of illegal reentry.

More concerning, however, is that the defendant presents a danger that he will continue to commit drug offenses if released. The bond study prepared in September 2017 indicated that the defendant had little in the way of legal employment. He reported having worked "on and off" for a temp staffing company in 2016, obtaining sporadic work through his own construction company (Sanchez Construction of Wisconsin LLC)[1] between 2015 and 2017 and managing a bar for one month in 2017. Dkt. No. 91 at 2. These facts, combined with the evidence at trial, support an inference that the defendant supported himself and his children through a combination of sporadic legal

---

[1] The Wisconsin Department of Financial Institutions web site indicates that this company was administratively dissolved on March 17, 2018, and that it had been delinquent on its corporate records since January of 2017. https://www.wdfi.org/apps/CorpSearch/Details.aspx?entityID=S104791&hash=1400337486&searchFunctionID=36b8941b-afce-4803-8e92-709c742e8a49&type=Simple&q=sanchez+construction+of+wisconsin+llc.

income, his girlfriend's income of $1,300 per month and income from drug dealing. As the court has noted, the defendant was illegally in the country during the period of the conspiracy, indicating that he was willing to engage in criminal conduct despite his knowledge that calling attention to himself could cause him to be deported. The conspiracy of which the defendant was convicted spanned eighteen months, involved numerous co-conspirators and involved significant amounts of heroin, cocaine and methamphetamine moving across the country from to the west coast to the Milwaukee area. The evidence at trial indicated that the defendant was higher up in the conspiracy, working closely with Luis Gomez, who appears to have been the head of the drug trafficking organization. All this information supports the conclusion that the defendant poses a danger of returning to drug dealing if released.

At his September 26, 2017 detention hearing, the government proffered that the defendant had talked with co-defendants about a cartel hitman, and about "put[ting] two in" co-defendant Juan Avina. Dkt. No. 104 at 1. As far as the court can tell from the minutes of that hearing, the defendant did not refute these allegations during that hearing. Id. On February 13, 2018, the defendant asked the court to reconsider the detention order, because the defendant needed orthodontic work and because his wife needed his help in caring for their children. Dkt. No. 254. At the March 14, 2018 hearing on that motion, the defendant argued regarding the allegations of drug dealing that he was not as involved in the conspiracy as the government appeared to believe.

5

Dkt. No. 268 at 1. The magistrate judge continued the order of detention. Id. at 268.

On September 11, 2018, the defendant filed another request for a bail modification. Dkt. No. 326. At this hearing, the defendant's lawyer indicated that he had reviewed the discovery, and had found no intercepted call in which the defendant threatened to kill anyone. Id. at 3. Counsel argued that given the complexity of the case, it was not likely to go to trial for at least a year, during which time counsel would have to travel back and forth to KCDC (fifty miles one way) to meet with the defendant and prepare for trial. Id. at 2. He proposed then what he proposes now—that he be released to live with his wife and children. Id. at 2-3. At the October 2, 2018 hearing on that motion, the government presented an intercepted call in which someone in California offered that if he saw Juan Avina, he would "pick him up," with the defendant responding, "please do, put three in him." Dkt. No. 333 at 1. The government also discussed phone calls between the defendant and members of the cartel, the ICE detainer, the fact that as an illegal alien the defendant would not be able to obtain lawful employment if released and the likelihood that the defendant could flee to Mexico. Id. at 1-2. Defense counsel disputed that the defendant was ordering a hit, argued that he had been working for a construction company, reiterated that it would take months for the case to get to trial, recounted problems he'd had getting access to his client in KCDC and asserted that the defendant didn't want to return to Mexico. Id. at 2. While

6

concerned about defense counsel's ability to have access to the defendant at KCDC, Judge Jones ordered the defendant's continued detention. Id.

It is against this backdrop that the defendant has filed the current motion for release. The defendant now has been convicted of a significant drug trafficking offense. The defendant still has little work history for a man who was almost thirty years old at the time of his arrest. His construction company no longer exists, and given his status as an illegal alien and convicted felon, he would be extremely limited in his options for lawful employment if released. He remains an illegal alien with an ICE detainer. The least amount of time he can expect to serve is ten years; the court suspects, given the evidence at trial, that the court may seek more. The fact remains that the defendant was involved in a significant drug conspiracy after having been removed from the United States and returning illegally.

The one thing that has changed since the defendant last sought release is the eruption of the COVID-19 pandemic in the United States, and in Wisconsin. The court acknowledges that this is no small change. The COVID-19 crisis has turned life upside down, and has greatly impacted people who are incarcerated. People in custody in a jail or prison are limited in their ability to practice necessary social distancing and good hygiene. Often incarcerated defendants have underlying health issues which make them more vulnerable to severe infection. The court has heard from many prisoners who are stressed and afraid—including prisoners in facilities with numbers of diagnosed cases and inmates who have underlying health conditions. The court can imagine

7

that the defendant is afraid both for himself and for his family. The court also is concerned to hear that almost two weeks ago, the defendant reported to counsel that he was feeling ill.

The defendant's motion raises two questions: whether the risk posed to the defendant by being in KCDC outweighs the danger that he will return to drug dealing if he is released and whether his release may pose other dangers which his motion does not address. The answers to these questions weigh against release, even if the defendant had met the §3143 factors.

This court has been updated weekly on the status of the jails in which federal detainees are housed. As of last week, there were KCDC inmates on "Droplet Precautions," which the CDC prescribes for individuals known or suspected to have been subjected to respiratory droplets from someone sneezing, coughing or talking. https://www.cdc.gov/infectioncontrol/basics/transmission-based-precautions.html. There were, however, no confirmed cases among inmates. There were several staff out with positive tests or symptoms. The government recounts the efforts KCDC has taken to prevent the spread of the virus—temperature checks for key staff before they begin work, collaboration with local health authorities and an infectious disease committee, jail staff and contractors wearing masks and cloth masks being given to inmates, screening and segregating incoming detainees, efforts to limit inmate-to-inmate contact, cancellation of personal visits, provision of extra cleaning materials and heightening disinfection, allowing inmates to see medical at any time. Dkt. No. 709 at 5-6.

8

Case 2:17-cr-00113-PP   Filed 04/27/20   Page 8 of 10   Document 710

The defendant has not indicated that he is a member of a vulnerable population. He is thirty-one years old and reported no health problems during his bond study (his orthodontic issues were related to his braces). Dkt. No. 91 at 1, 3. He does not indicate that he has been exposed to anyone with the virus. While it is concerning that the defendant reported to his counsel that he didn't feel well in mid-April, and that counsel reported that the defendant was describing virus-like symptoms, the defendant has not provided updated information indicating that he has been diagnosed with the virus.

Given this, the court cannot conclude that the risk to the defendant outweighs the danger he presents to the community if released. This is especially so given the defendant's release plan. As the government points out, the defendant proposes to go home to live with his wife and children. If the defendant has been exposed to the virus in custody, his return home would expose his wife and children to that risk.

The court emphasizes that it does not mean to minimize the defendant's concerns about himself or his family. The court very much hopes that the defendant is healthy, and that his family is safe and healthy. But given the defendant's conviction, his history of drug dealing and illegal reentry, the sentence he faces and the efforts KCDC is taking to control spread, the court will deny the defendant's April 15, 2020 motion to modify bail.

The court **ORDERS** that the defendant's motion to modify bail is **DENIED**. Dkt. No. 706.

Dated in Milwaukee, Wisconsin this 27th day of April, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**